Reversed and Remanded Opinion filed June 22, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-01046-CV



950 Corbindale,
L.P., 950 Corbindale Management, L.L.C., 9041 Katy Freeway, Ltd., 9041 Katy
Freeway Management, L.L.C., 9039 Holdings Management, L.L.C., Lester Allison,
and Richard Plessala, Appellants 

v.

Kotts Capital
Holdings Limited Partnership and Kotts Captial Holdings, Inc., Appellees 



On Appeal from
the 334th District Court

Harris County, Texas

Trial Court
Cause No. 2009-63535



 

 OPINION

This is an accelerated interlocutory appeal from the
denial of a motion to stay litigation and compel arbitration.  Appellants, 950
Corbindale, L.P., 950 Corbindale Management, L.L.C., 9041 Katy Freeway, LTD.,
9041 Katy Freeway Management, L.L.C., 9030 Holdings, L.P., 9030 Holdings
Management, L.L.C., Lester Allison, and Richard Plessala, contend the trial
court abused its discretion by denying their motion to stay litigation and
compel arbitration.  We agree.

Factual and Procedural Background

I.         The
Partnership Agreements

In 2004, the parties entered into three limited
partnerships for the purpose of acquiring, operating, managing, owning,
selling, or otherwise disposing of real property.  The three limited
partnerships are “950 Corbindale, LP”, “9041 Katy Freeway, Ltd.”, and “9030
Holdings, LP”.  Each of the three partnerships own a tract of real property in
Hedwig Village near the Katy Freeway.  The three partnerships are structured
essentially the same way.  Each partnership has as its general partner a limited
liability company with the same name as the partnership.  Richard Plessala is
the president of each of the limited liability companies serving as general
partners for the partnerships.  The partnerships also each have three limited
partners, which are divided into three classes based on their capital
contributions and provide for different returns based on the amount of
contribution.  The Class I limited partner in each of the partnerships is Kotts
Capital Holdings, LP, president John Kotts.  The Class II limited partner is
Lester Allison and the Class III limited partner is Richard Plessala.  Because
Kotts Capital Holdings, LP provided the majority of initial capital
contribution, it was granted a preferential right of return.  Kotts Capital
Holdings, LP must receive a 10% return per annum on its capital contributions
and a return on its capital contribution before the other limited partners
receive a distribution.  

The partnership agreements grant the general partners
of the partnership broad powers and responsibilities to manage, operate, and
control the business and affairs of the partnerships.  If the general partners
decide to sell the real property held by the partnership, the partnership
agreements provide that the general partners must obtain the consent of the
Class I and Class II limited partners in the aggregate of more than 50% of the
interest in the partnership.  The partnership agreements contain buy-sell
procedures in the event there is a deadlock resulting from the failure of Kotts
Capital Holdings, LP and Allison (Class I and Class II limited partners) to
reach an agreement.  This procedure allows one limited partner to make an offer
to any of the other limited partners to either purchase all of the other
partners’ aggregate interest or sell to the other partner all of his aggregate
interest in order to resolve the deadlock.

Additionally, the partnership agreements all contain
an agreement to arbitrate “any claim, dispute, claim [sic], controversy or
disagreement (each a ‘Dispute’) between the parties or any of their
respective subsidiaries, Affiliates, successors and assigns under or related to
this Agreement or any document executed pursuant to this Agreement or any of
the transactions contemplated hereby.”  The agreement to arbitrate contains a clause
providing that “[t]he arbitrators will have the authority to award compensatory
damages only.”

II.        The Offer

On August 20, 2009, the partnerships received an
offer to purchase all three tracts of property for a lump sum.  The offer was
made by John Kotts, president of Kotts Capital Holdings, LP, the Class I
limited partner.  The general partner of each partnership rejected the offer
because under the preferred return provisions only the Class I limited partner,
Kotts Capital Holdings, LP, would receive any of the sale proceeds.  

III.      Request for Declaratory Relief 

On October 2, 2009, Kotts Capital Holdings, LP and
Kotts Capital Holdings, Inc. (appellees) filed a petition in Harris County
district court against 950 Corbindale, LP; 950 Corbindale Management, LLC; 9041
Katy Freeway, Ltd.; 9041 Katy Freeway Management, LLC; 9039 Holdings, LP; 9039
Holdings Management, LLC; Lester Allison; and Richard Plessala (appellants)
requesting declaratory relief.  In their petition they asked the court to clarify
the parties’ rights, status, and other legal relations under the partnership
agreements.  Appellees contended that appellants—specifically the general
partners—had a conflict of interest and could not fairly evaluate the offer and
rejected it out of self-interest.  Appellees contend the offer should have been
submitted to the Class I and Class II limited partners instead, and if a
deadlock resulted, the buy-sell procedures could be invoked.

In response, appellants filed a general denial
subject to a motion to stay litigation and compel arbitration.  The appellants
argued that each of the partnership agreements contained a valid arbitration
agreement and that the dispute fell within the scope of the arbitration
agreements.  Appellees responded with an opposition to appellants’ motion to
stay litigation and compel arbitration.  The appellees argued the partnership
agreements (containing the arbitration agreements) entered into evidence were
not properly authenticated and therefore were insufficient evidence of a valid
agreement to arbitrate.  Alternatively, appellees argued that if the court
found a valid arbitration agreement existed, that the dispute did not fall
within the scope of the arbitration agreement.  Specifically, appellees
contended their request for declaratory relief falls outside the scope of the
arbitration agreement because the arbitration agreement provides that
arbitrators may award “compensatory damages only”.  

On November 13, 2009, the district court conducted a
hearing to decide the arbitration issues.  During the hearing, the parties
entered into a Rule 11 agreement, providing that appellees waived any
objections to authenticity of the partnership agreements.  On November 18,
2009, the district court denied appellants’ motion to compel arbitration.  In
its order, the court found “[t]he contract, as a whole, does not support a
finding that all remedies other than compensatory damages are waived. 
Defendant has not met its burden.”  Appellants timely filed this interlocutory
appeal.                

Discussion

Appellants contend the only issue before this court
is whether the trial court abused its discretion in determining the declaratory
judgment action was outside the scope of the arbitration agreement.  Appellants
argue appellees conceded the validity of the arbitration agreement by way of a
Rule 11 agreement.  Appellees disagree.  Appellees contend the validity of the
arbitration agreement was not established in the Rule 11 agreement; they argue
they conceded only the authenticity of the partnership agreements, including
the arbitration agreement, entered into evidence.  Furthermore, appellees
contend their declaratory judgment action was outside the scope of the
arbitration agreement and that the trial court properly denied appellants’
motion to stay litigation and compel arbitration.[1]  

I.         Standard of
Review

            To
enforce an arbitration agreement, a party must establish (1) the existence of
an agreement to arbitrate, and (2) the claims asserted fall within the scope of
the agreement.  In re Prudential Sec., Inc., 159 S.W.3d 279, 282 (Tex.
App.—Houston [14th Dist.] 2005, no pet.).  The court has no discretion but to
compel arbitration if the answer to both questions is affirmative.  Valero
Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576, 581 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).  The trial court’s determination of the
arbitration agreement’s validity is a legal question subject to de novo
review.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex.
2003).  In determining the validity of agreements to arbitrate, we generally
apply principles governing the formation of contracts.  In re Palm Harbor
Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006).  

            Once
a valid agreement to arbitrate has been established, the court must then determine
whether the arbitration agreement covers the nonmovants’ claim.  In re
FirstMerit Bank, N.A., 52. S.W.3d 749, 753 (Tex. 2001).  Under the Federal
Arbitration Act, any doubts as to whether appellees’ request for declaratory
relief falls within the scope of the arbitration agreement must be resolved in
favor of arbitration.[2] 
Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995).  The
policy in favor of enforcing arbitration agreements is so compelling that a
court should not deny arbitration “unless it can be said with positive
assurance that an arbitration clause is not susceptible of an interpretation
which would cover the dispute at issue.”  Marshall, 909 S.W.2d at 899
(quoting Commerce Park at DFW Freeport v. Mardian Constr. Co., 729 F.2d
334, 338 (5th Cir. 1984)).  The presumption of arbitrability is particularly
applicable when the clause is broad; that is, it provides for arbitration of
“any dispute arising between the parties,” or “any controversy or claim arising
out of or relating to the contract thereof,” or “any controversy concerning the
interpretation, performance or application of the contract.”  Babcock &
Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 230 (Tex. App.—Houston [14th
Dist.] 1993, writ denied).  In such instances, absent any express provision
excluding a particular grievance from arbitration, only the most forceful
evidence of purpose to exclude the claim from arbitration can prevail.  Id. 
In determining whether a claim falls within the scope of an arbitration
agreement, we focus on the factual allegations of the complaint, rather than
the legal causes of action asserted.  Marshall, 909 S.W.2d at 900.  The
burden was upon appellees to show that their request fell outside the scope of
the arbitration agreement.  Id.   

II.        Analysis


            A.        Validity
of the Arbitration Agreements

            Appellees
argue the arbitration agreements are invalid because they cause a waiver of
substantive rights and remedies afforded by statute.  Appellees claim because
the arbitration agreements state “[t]he arbitrators will have the authority to
award compensatory damages only,” the arbitrator does not have the authority to
grant appellees the declaratory relief they seek or any of the statutory
remedies prescribed by the Uniform Declaratory Judgments Act.  Appellees rely
on In re Poly-America, L.P. for the contention that the
arbitration agreement at hand is unconscionable.  See In re Poly-America,
L.P., 262 S.W.3d 337, 349, 352–53 (Tex. 2008) (holding arbitration
agreement’s provisions expressly precluding remedies available under the
Workers’ Compensation Act were substantively unconscionable and void under
Texas law).  Appellants argue appellees waived the unconscionability argument
by failing to present it to the trial court.           An allegation that a provision
in a contract is void, unenforceable, or unconscionable is a matter in the
nature of avoidance and must be affirmatively pleaded.  Tex. R. Civ. P. 94
(noting party must affirmatively plead any matter constituting an avoidance or
affirmative defense); Parks v. Developers Sur. and Indem. Co., 302
S.W.3d 920, 924 (Tex. App.—Dallas 2010, no pet.).  If a party fails to plead
the affirmative defense, it is waived.  Id. at 924.  Because appellees
failed to assert in the trial court that section 16.3(d) causes a waiver of
rights under the Uniform Declaratory Judgment Act, we may not now consider
their argument.  See id.            

            The
only argument appellees presented before the trial court regarding the validity
of the arbitration agreements was that the agreements were not properly
authenticated and therefore not sufficient evidence of an agreement.  Because
appellees conceded the authenticity of the agreements in the Rule 11 agreement,
they waived the only argument they presented to the trial court regarding the
validity of the arbitration agreements.    

            Accordingly,
we see no evidence indicating the arbitration agreements appellants entered
into evidence are not valid.  

            B.        Scope

            Appellants
contend the provision giving the arbitrator authority to “award compensatory
damages only” does not foreclose an arbitrator’s ability to grant declaratory
relief.  We agree.      

            The
“dispute provision” in section 16.3(a) of the arbitration agreements at hand is
broad, requiring that any dispute under or related to the partnership agreement
or any document executed pursuant to the partnership agreement or any of the
transactions contemplated by the partnership agreement shall be subject to
arbitration.  The only limitation in the arbitration agreements is the type of
damages that may be awarded—compensatory only.  The word “only” is a modifier. 
The rule concerning modifiers is: 

The reader naturally assumes that the parts of a sentence
which are placed next to each other are logically related to each other. . . .
The rule which will guide you may be stated in two parts: (1) place all
modifiers, whether words, phrases, or clauses, as close as possible to the
words they modify; (2) avoid placing these elements near other words they might
be taken to modify.

Samano
v. Sun Oil Co., 621 S.W.2d 580, 582 (Tex. 1981)
(quoting Kierzek, The MacMillan Handbook
of English (3d ed. 1954)).  Another statement of the rule of grammar is:
“[p]lace modifiers so that they will be connected immediately with the words
they modify.”  Id. (quoting Wooley
& Scott, College Handbook of Composition 72 (4th ed. 1944)).   Because
the word “only” directly follows the words “compensatory damages”, proper rules
of grammar indicate “only” was intended to modify  these words .  If “only” had
been placed next to the word “authority”, then it might indicate the
arbitrator’s had authority only to grant compensatory damages; however, that is
not the case.  Appellees brought an action for declaratory relief, not damages. 
The arbitrator’s authority to grant declaratory relief was not limited.  Along
the same line, had appellees brought an action for damages other than
compensatory damages, then the arbitrators would be without authority to award
them.   

            Appellees’
claims fall within the broad provision of section 16.3(a), defining
“disputes”.  Consequently, appellees’ request for declaratory relief is within
the scope of the arbitration agreement.  The trial court abused its discretion
by denying appellants’ motion to compel arbitration.   Accordingly, we sustain
appellants’ sole issue.  

Conclusion

            We
hold the trial court erred in denying appellants’ motion to stay litigation and
compel arbitration.  We reverse the order denying the motion to stay litigation
and compel arbitration and remand this cause with instructions to the trial
court to enter an order compelling arbitration.

 








                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

 

Panel consists of Justices Anderson,
Frost, and Seymore.

 









[1]
Appellees also contend appellant’s claims under the Federal Arbitration Act
(FAA) are barred because appellants failed to bring those claims pursuant to a
writ of mandamus.  The legislature recently amended this requirement and now
allows parties to take appeal of an interlocutory order in matters subject to
the Federal Arbitration Act.  See Tex. Civ. Prac. & Rem. Code Ann. §
51.016 (Vernon Supp. 2009).      





[2]
Whether a case is governed by the FAA or the TAA, many of the underlying
substantive principles are the same.  In re FirstMerit Bank, N.A., 52
S.W.3d 749, 753 (Tex. 2001).  This opinion relies interchangeably on cases that
discuss the FAA and TAA.