**Affirmed and Memorandum Opinion filed November 29, 2011.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00001-CV

### TOMASA LOPEZ AND BAUDELIO LOPEZ, Appellants

### V.

### CASA PONTIAC GMC BUICK, INC., Appellee

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2006-58538**

## M E M O R A N D U M   O P I N I O N

In this dispute regarding an automobile purchase, appellants Tomasa Lopez and Baudelio Lopez challenge the trial court's order compelling arbitration and its judgment entering the arbitration award. First, they assert that the trial court erred in granting the motion compelling arbitration filed by appellee Casa Pontiac GMC Buick, Inc. ("Casa Pontiac") because Casa Pontiac failed to prove that a valid arbitration agreement encompassed the disputed issues. Next, they contend that the trial court should not have granted Casa Pontiac's motion to confirm the arbitration award because the arbitration agreement was not enforceable. We affirm.

## BACKGROUND

In December 2004, Baudelio Lopez attempted to purchase a vehicle from Casa Pontiac, an automobile dealership located in Baytown, Texas. Because he did not have a sufficient credit rating to qualify for an automobile loan, his sister, Tomasa Lopez, agreed to co-sign the loan. She came into the dealership and signed various financing paperwork, including an Arbitration Agreement.[1] This agreement provides in pertinent part:

> Buyer/Lessee acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are in, affect, or have a direct impact upon, interstate commerce.

> Buyer/lessee and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase or insurance, purchase of extended warrantees or service contracts, Casa Benefit Package, the performance condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provisions of 9 U.S.C. Section 1 et seq. and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, and damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing, any representations, promises or omissions made in connection with negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle. . . .

---

[1] Tomasa had to return to Casa Pontiace on a later date to sign additional paperwork, but the arbitration agreement was signed the day Baudelio took possession of the vehicle.

Tomasa asserts she was not provided copies of the financing paperwork when she signed it. She does not dispute, however, that she signed the arbitration agreement. According to Tomasa, she later received the paperwork and discovered that the loan terms were not what Baudelio had agreed to and that the monthly payment and financing charges were higher than expected. She also alleged that her signature had been forged on the motor vehicle retail installment sales contract, which contained several additional fees neither she nor Baudelio had authorized. Tomasa and Baudelio attempted to resolve the matter with Casa Pontiac, but were unsuccessful. They filed suit against Casa Pontiac on September 15, 2005, alleging "unconscionable conduct" under the Texas Deceptive Trade Practices-Consumer Protection Act (the "DTPA").[2]

Casa Pontiac answered and filed a motion to compel arbitration pursuant to the arbitration agreement. The Lopezes responded, seeking to resist arbitration, but provided no evidence in support of their opposition motion. The trial court heard the motion to compel and later, on November 6, 2006, granted Casa Pontiac's motion to compel and ordered the parties to arbitration. The Lopezes filed a motion for reconsideration, which was denied by the trial court. The Lopezes then filed a petition for writ of mandamus with this court, which we denied because we found that the Lopezes were not entitled to mandamus relief. *See In re Lopez*, No. 14-07-00536-CV, 2007 WL 2330928, at \*1 (Tex. App.—Houston [14th Dist.] Aug. 16, 2007, orig. proceeding) (mem. op.). Our memorandum opinion did not state a substantive basis for the ruling. *Id.*

This case remained in the trial court without activity for almost two years. The Lopezes filed a petition to compel arbitration *or* to vacate the order to compel arbitration in June 2009. On February 19, 2010, the trial court signed another order compelling the case to arbitration within thirty days. The Lopezes filed a motion for reconsideration, asking the trial court to vacate the order compelling arbitration. Casa Pontiac responded to this motion, and the trial court signed an order denying the Lopezes' motion for reconsideration on May 17, 2010.

---

[2] *See* Tex. Bus. & Com. Code Ann. § 17.41 (West 2011).

The case proceeded to arbitration, and an award denying the Lopezes' claims was issued on November 16, 2010. Casa Pontiac filed a motion to confirm the arbitration award in December 2010. The Lopezes filed a motion to vacate the arbitration award and to vacate the order compelling arbitration. On December 20, 2010, the trial court signed a final judgment confirming the arbitration award that the Lopezes take nothing against Casa Pontiac. This appeal timely followed.

## STANDARD OF REVIEW

A party moving to compel arbitration must establish that (1) a valid, enforceable arbitration agreement exists, and (2) the claims asserted fall within the scope of that agreement. *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 1999, no pet.). If the movant establishes that an arbitration agreement governs the dispute, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding). "Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001). Consequently, we consider whether an agreement imposes a duty to arbitrate under a de novo standard of review. *In re Provine*, No. 01-09-00769-CV; 2009 WL 4967245, at *3 (Tex. App.—Houston [1st Dist.] Dec. 10, 2009, orig. proceeding).

## ANALYSIS

In their first issue, the Lopezes assert that the trial court erred in granting Casa Pontiac's motion to compel arbitration because Casa Pontiac failed to prove that an agreement to arbitrate requires arbitration of the issues in dispute here. In three broad sub-issues, the Lopezes contend that: (1) Casa Pontiac did not prove that the Federal Arbitration Act (the "FAA")[3] applies to the arbitration agreement; (2) the agreement did not expressly require arbitration of a claim of unconscionable conduct under the DTPA;

---

[3] *See* 9 U.S.C.A. §§ 1–307.

4

and (3) the trial court was required to hold an evidentiary hearing because they claimed that the arbitration agreement is procedurally unconscionable and because they demanded a jury trial on this issue. Under each of these main sub-issues, the Lopezes offer numerous supporting arguments, many of which are inadequately briefed.[4] Their second issue, in which they assert the trial court erred in entering the arbitration award, relies exclusively on a determination that the arbitration agreement was unenforceable.

## A. Casa Pontiac Proved the FAA Applies to the Arbitration Agreement

The FAA applies to all suits in state or federal court when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding). "Interstate commerce" in this context is not limited to the actual shipment of goods across state lines, but includes all contracts "relating to" interstate commerce. *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). To be applicable, the FAA does not require a substantial effect on interstate commerce; it requires only that commerce be involved or affected. *See In re L & L Kempwood Assocs.*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding). Interstate commerce may be shown in a variety of ways, including: (1) location of headquarters in another state; (2) transportation of materials across state lines; (3) manufacture of parts in a different state; (4) billings prepared out of state; and (5) interstate mail and phone calls in support of a contract. *See Jack B. Anglin*, 842 S.W.2d at 270.

The purchase of an automobile clearly implicates interstate commerce. *Cf. In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754 (concluding that installment contract for sale of mobile home related to interstate commerce and was subject to FAA). Moreover, the arbitration agreement explicitly states that the contract relates to interstate commerce: "Buyer/Lessee acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and

---

[4] *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

5

other aspects of the sale, lease or financing transaction are in, affect, or have a direct impact upon, interstate commerce." Finally, the arbitration agreement explicitly provides that the FAA governs, and Tomasa admits that she signed the agreement. *See In re Choice Homes, Inc.*, 174 S.W.3d 408, 412 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) ("When parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce."); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (concluding that, because courts have upheld choice-of-law provisions in arbitration agreements, when parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce).

Under these circumstances, Casa Pontiac established that the FAA applies to the arbitration agreement. The Lopezes' arguments to the contrary are without merit. We overrule this portion of the Lopezes' first issue.

## B. The Arbitration Agreement Applies to the Lopezes' Unconsionability Claim Under the DTPA

To determine whether a claim falls within the scope of an arbitration agreement, we examine the factual allegations of the complaint rather than the legal causes of action. *In re FirstMerit Bank*, 52 S.W.3d at 754. To fall within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision. *In re Prudential Sec., Inc.*, 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding). Any doubts about these issues must be resolved in favor of arbitration. *In re FirstMerit Bank*, 52 S.W.3d at 754.

Turning to the Lopezes' factual allegations, they assert that Casa Pontiac engaged in an unconscionable action or course of action by (a) deceiving Baudelio about being able to improve his credit rating by merely making payments towards a note in someone else's name, (b) changing the agreed upon price of the automobile, (c) adding additional charges for services that neither of the Lopezes had agreed to, (d) changing the monthly

6

payments that had been agreed upon, and (e) forging Tomasa's signature on the sales contract. All of these factual allegations arise out of or relate to the sale and financing of the vehicle. As noted in the excerpt from the arbitration agreement above, these types of claims all fall within the scope of the arbitration agreement. Accordingly, Casa Pontiac established that the arbitration agreement encompasses the Lopezes' claims.

Because Casa Pontiac established that the agreement covers the Lopezes' claims, the burden then shifted to them to establish a valid defense to the arbitration agreement. *J.M. Dvidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). These defenses include fraud, waiver, unconscionability, or that the dispute falls outside the scope of the agreement. *Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex. App.—San Antonio 2000, pet. dism'd). However, defenses must relate to the arbitration agreement itself, not the contract as a whole, to defeat arbitration. *In re FirstMerit Bank*, 52 S.W.3d at 756. Additionally, a party opposing arbitration must present evidence to support its defense; otherwise it fails to satisfy its burden and the trial court should compel arbitration. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding) (per curiam), *abrogated on other grounds by In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding).

In their opposition to Casa Pontiac's motion to compel arbitration, the Lopezes alleged that the arbitration agreement is invalid "due to the unconscionable conduct of [Casa Pontiac] over the course of the entire transaction and because the Arbitration Agreement was the first step in the fraudulent scheme."[5] Although they raised an unconscionability defense by asserting that their lack of education and sophistication in legal and financial matters, coupled with their weak English skills, rendered the arbitration agreement unconscionable, they presented no evidence to support this defense.

---

[5] Under Texas law, "unconscionability includes two aspects: (l) procedural unconscionability, which focuses on the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which focuses on the terms of the arbitration provision itself." *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 910 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Based on the allegations in the Lopezes' opposition to Casa Pontiac's motion to compel arbitration, it appears they were alleging the arbitration agreement is invalid because of procedural unconscionability. However, in the opposition motion, the Lopezes did not indicate which defense they were claiming.

*See In re Oakwood Mobile Homes*, 987 S.W.2d at 573. It was only after the trial court signed Casa Pontiac's motion to compel arbitration and denied the Lopezes' motion for reconsideration that they presented evidence in the form of an affidavit by Tomasa to show that the arbitration agreement was invalid. But a late-filed affidavit raising a defense to an arbitration agreement should not be considered as evidence. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996) (per curiam).

Because the Lopezes failed to timely present evidence supporting their defense to arbitration, the trial court had no discretion but to stay its proceedings and compel arbitration. *See In re FirstMerit Bank*, 52 S.W.3d at 753–54; *EZ Pawn Corp.*, 934 S.W.2d at 91. Accordingly, the Lopezes' converse arguments lack merit,[6] and this sub-issue is overruled.

## C. The Trial Court Was Not Required to Hold an Evidentiary Hearing

Relying on *In re Washington Mutual Finance, L.P.*, appellants assert that a trial court must hold an evidentiary hearing to determine disputed material facts. 173 S.W.3d 189, 192–93 (Tex. App.—Corpus Christi 2005, orig. proceeding) (citing *Jack B. Anglin*

---

[6] The Lopezes rely largely on an Alabama case to support their claim that an allegation of forgery is not arbitrable. *See Carl Gregory Chrysler-Plymouth, Inc. v. Barnes*, 700 So.2d 1358, 1360 (Ala. 1997) (per curiam) (plurality op.). Notably, the *Gregory* case involved only an allegation that Barnes's signature was forged on an extended service agreement. The Alabama Supreme Court concluded:

> We find no agreement to arbitrate the dispute in this case. Although the arbitration provision Gregory relies on is broad, it is clear that it does not compel arbitration of Barnes and Rogers's claim. The dispute here does not concern the negotiations leading to the sale of the Hyundai, nor does it concern the terms and provisions of the sale, the performance or the condition of the Hyundai, or any other aspect of the vehicle or its sale. *The dispute arises solely from Gregory's alleged forgery of Barnes's signature onto the service agreement.* The fact that the arbitration provision mentions service contracts does not compel arbitration of this dispute, because Barnes says the only reason he has a service agreement is that his name was forged onto it—this alleged forgery is the heart of the fraud alleged in this case.

*Id.* (emphasis added). Here, the Lopezes' claims do not involve simply the alleged forgery; instead, they encompass most of the matters relating to the negotiation and sale of the vehicle, including the alleged forged financing agreement. This factor undermines their reliance on this out-of-state case because to fall within the scope of an arbitration agreement, allegations need only be factually intertwined with arbitrable claims or otherwise touch on the subject matter of the arbitration agreement. *In re Prudential Sec., Inc.*, 159 S.W.3d at 283.

*Co.*, 842 S.W.2d at 269. However, a court is not required to conduct an evidentiary hearing before compelling arbitration in every case. *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding); *In re Washington Mutual*, 173 S.W.3d at 192. A trial court may summarily determine to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. *In re Jim Walter Homes*, 207 S.W.3d at 896. A material fact issue must be raised, by affidavit or other admissible evidence, to necessitate an evidentiary hearing. *Id.* at 897. Here, as discussed above, the Lopezes failed to provide any evidence to support their defense of unconscionability when the trial court initially ordered the parties to arbitration. Accordingly, the trial court was not required to hold an evidentiary hearing in this case. We overrule this sub-issue, which disposes of the entirety of their first issue.

### D. The Trial Court Did Not Err in Granting Casa Pontiac's Motion to Confirm the Arbitration Award

In their second issue, the Lopezes assert that, because the arbitration agreement is unenforceable, any award granted by an arbitrator is unenforceable. But as discussed above, we have determined that the trial court properly compelled the parties to arbitration because a valid arbitration agreement exists, which covers the Lopezes' claims, and to which they provided no evidence of a defense to arbitration. Hence, their second issue presents nothing for our review and is overruled.

### CONCLUSION

Having overruled each of the Lopezes' issues, we affirm the trial court's judgment.


/s/      Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.

9